## COLUMBUS (City), Plaintiff-Appellee v. CARTER, Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 3506.   Decided January 28, 1943.

John L. Davies, city attorney, Columbus; Richard W. Gordon, asst. city attorney, Columbus, for plaintiff-appellee.

Addison, Isaly & Addison, Columbus, for defendant-appellant.

## OPINION

By GEIGER. P. J.

Rich Street and Town Street are two east and west streets in

Columbus, Ohio, immediately adjacent. Grant Avenue is a north and south avenue, crossing these two east and west streets. The defendant was tried in the Police Court on an affidavit.

Without the formal parts the affidavit alleges that "one Belle Carter, * * * being then and there the driver of a motor vehicle * * * did unlawfully fail to stop and to keep stopped said vehicle upon the signal of a red traffic light, there stationed at Town Street and Grant Avenue and operate said vehicle 'acrost' Town Street before traffic signal turned green causing accident contrary to the ordinance of said city in such cases made and provided. * * *'"

The first inaccuracy that presents itself is that there is an allegation that the defendant operated said vehicle " 'acrost' **Town Street** before traffic signal turned green."

The defendant was proceeding eastward on Town Street and did not attempt to cross said street, but was crossing Grant Avenue.

Section 1253 of city ordinances provides:

"It shall be unlawful for the driver of any vehicle or for the motorman of any street car to disobey the instruction of any official traffic sign or signal placed in accordance with the provisions of this chapter * * *."

The penalty ordinance, Sec. 1328, provides that any person violating any of the provisions of the chapter shall be punished as therein provided.

The affidavit, in fact, charges two offenses against the defendant, one based upon the claim that she failed to stop in response to the red light signal; and second, that she proceeded to cross the street before the traffic signal had turned green.

In the Municipal Court the defendant was found guilty and assessed a fine of $25.00. She appealed to the Court of Common Pleas where the decision of the Municipal Court was affirmed. The Court of Common Pleas in a decision refers to the fact that counsel has objected to the form of the affidavit. Sec. 13449-5, GC cures any of the defects urged by counsel.

After the decision in the Court of Common Pleas affirming the judgment of the Municipal Court, the case was appealed to this Court on questions of law and six errors are assigned:

(1) Judgment contrary to the evidence.

(2), (3). Error in overruling defendant's motion to dismiss at the close of the plaintiff's evidence and at the close of all the evidence.

(4). Error in refusing to strike from the record all the evidence of the prosecution.

(5). Error in considering the evidence not offered in court.

(6). Evidence did not show the defendant guilty.

While much of the evidence in this case relates to the condition of the traffic light controlling traffic on Grant Avenue on the theory

that whatever light is shown on Grant Avenue would have a reverse light on the intersecting Town Street, this is not a safe ground for inference as to the relative condition of the light governing traffic on the intersecting streets.

The evidence displayed by the bill of exceptions is to the effect that about 12:45 P. M. on the day named, and at the intersection of Town Street and Grant Avenue, the defendant's car came into collision with a fire department emergency car, which was then proceeding northwardly, causing said department car to leave the road, jump the curb, cross the sidewalk and break through an iron fence. The evidence, as in most criminal cases, is conflicting. It would be of little value to review the evidence of the several witnesses. It is sufficient to say that the driver of a fire department car and the chief officer riding with him testified to the effect that there had been an alarm of fire, and that the fire car was proceeding northwardly on Grant Avenue; that as it approached the crossing of Rich Street, the red light was against its passage, but that a police officer who chanced to be at said crossing signalled the fire department car to proceed through the red light. The square between Rich Street and Town Street is rather short. It is testified that the department car was proceeding northwardly at about 25 miles per hour. When it approached the intersection of Town Street and Grant Avenue the fire chief testified that he noted that the light was green; "just when it turned green I don't know, but it was green when we got to the corner there in favor of the north and south traffic." The fire car as it proceeded northward sounded its siren, but this was softened as it approached the corner of Town Street and Grant Avenue, because of the close proximity of the Grant Hospital, this being the custom of drivers of city cars. As the fire chief's car was crossing the intersection, the defendant's car approached from the west and struck the fire car amidships. The other witnesses for the State were substantially in accord with the first witness whose testimony has been detailed.

The defendant testifies very positively and apparently intelligently that she was proceeding eastward on Town Street and was keeping a close watch upon the traffic light, which was green in her favor, but that as she entered the intersection the fire chief's car, passing northward, impeded her progress and was struck.

We cannot avoid the comparison between the evidence of the State's witnesses and of the defendant, in that the defendant testified from a positively observed condition, while the State's witnesses state their conclusion on the inference drawn from a change in the traffic light by the flashing of a red signal, together with the green light, indicating that the green light was in favor of the north moving car. When the city car crossed Rich Street the red light was against it and the officer signalled it through. The square being rather short and the speed being at least twenty miles an hour, in order to make the evidence of the Chief consistent, it would neces-

sitate the change of the red light, which was against the north-bound traffic at Rich Street, to a green light, and the passage of sufficient time between Rich and Town to cause the signal to show a red light, together with green, at the time the Chief's car was approaching the intersection. Due to the shortness of this square and the speed at which the car was operating, we are of the opinion that there must have been some confusion in the mind of the witness as, when he passed Rich Street he still had some remnant of the red light time before there was a change to the green light, and that he should have had sufficient time to reach and pass the intersection of Town and Grant before there was a flash of a red light against traffic in Grant Avenue. It is true that this same argument can be used by the State to the effect that even though the witness may have been mistaken as to the appearance of a red light, that he evidently was traveling upon a green light and that as a consequence the defendant should have been controlled by a red light on Town Street, indicating a right of way to the northbound car. The defendant did not hear the siren of the city car.

The most interesting witness and one who seems to have testified with great intelligence was Perry H. Mahness who testified that he was a patient at the hospital, which was immediately upon the northwest corner of Town and Grant; that he occupied a room on the fifth floor; that his bed was drawn close to the window, which was open, and that he had a full view of Grant Avenue and its intersection with Town Street. This witness testifies that he could see the intersection; that it happened that he was talking over the telephone to his mother and heard the siren and remarked to his mother over the 'phone that another ambulance was coming, as one had just come in about five minutes before. This witness testified that he could see about 35 or 40 feet beyond the intersection on Grant and Town; that when he saw a car coming into view, he still thought it was an ambulance, but upon discovering that it was not he remarked to his mother, "It's a fire wagon", and said, "oh-oh, he is going to run the red light; the light was red north; that at the same time another car was coming from the west, east on Town Street, and entered the intersection and really entered it a split second before the car going north. The car going north was moving rapidly and the car going east was not going very fast. They simply progressed in their relative directions until they met with a collision in the center of the street." The witness heard the siren for a second or two before the crash, but that it was not sounding when the car approached some 35 or 40 feet south of the intersection of Town and Grant. The witness states that he noted in the paper that Mrs. Carter had been arrested and that he offered to become a witness in her favor. This witness testified:

"Q. Red north and south? A. Red, north, and I don't know how it showed south."

The Court of Common Pleas expressed himself as satisfied with the decision of the court below on the theory that the court had the opportunity to hear the witnesses testify orally and to observe their conduct and demeanor, which reasons are frequently stated for a refusal to disturb the finding of the trial court.

**Article IV, §6 of the Constitution** relates to Courts of Appeals, and in that Article it is stated:

"No judgment of a Court of Common Pleas and Superior or **other** court of record shall be reversed except by the concurrence of all the judges of the Court of Appeals on the weight of the evidence, and by a majority of such Court of Appeals upon other questions."

While at least one member of this court is of the view that the judgment of the court below should be reversed as against the weight of the evidence, yet there is not a "concurrence of all the judges of the court * * * on the weight of the evidence", some members of the court being of the opinion that the court would not be justified in setting aside the verdict as against the weight of the evidence. Each member of this court has given consideration to the testimony of Perry H. Mahness, the patient at the hospital, whose evidence has been detailed. The trial court, no doubt being impressed with the importance of the testimony of this witness, went to the hospital a few days after the trial to determine whether or not a patient lying in bed could see the lights at the intersection. The trial court, before passing upon the case, stated in the presence of counsel, such statement appearing on page 35 of the bill of exceptions:

"Well, I have heard quite a bit of testimony in this case. Somebody testifying in this case was mistaken and I don't say they were telling a falsehood, but somebody was mistaken as to who had the green light. There were three people down on the street who were all within a block of the light, and they all said it was green for the fire department, except a patient who was up in room 508 overlooking Grant Avenue, looking out of the window, and about a week ago the court went up to inspect this room, and from my observation it would be a very difficult angle to see down to the street —the street light can be seen from there, but it is very difficult to see it.

"So I can only arrive at one conclusion that the patient in the hospital was mistaken as to what he saw when referring to the light, in view of the testimony of the other witnesses who were down on the street and did see it.

"Of course I find the defendant guilty on this charge."

Counsel filed a motion for a new trial. stating:

"Now comes the defendant, Belle Carter, and moves the court to set aside the judgment for conviction and for a new trial on the following grounds", enumerating seven.

No. 6 is to the effect that "the court erred in the consideration of evidence not offered in court by witnesses, which the defendant could be permitted to meet face to face". This alludes to the action of the court in his visit to the room said to be occupied by the patient.

Counsel for the city in his brief at page 4 comments upon this matter and states:

"Though the record is silent on this point, the fact is that at the conclusion of the arguments of counsel on December 29, 1941, the court, from the bench and in the presence of both counsel and of the defendant, stated that he intended to visit the scene of the accident and view the hospital room occupied by the witness, Mahness, before rendering judgment. Counsel for both parties expressed themselves as satisfied with this proposed action by the court, and, in response to his inquiry, they stated that they preferred he make this view unattended by counsel or interested parties. This statement constituted a clear waiver by the defendant of any objection to view by the court under the decision of Ames v State, 11 O. N. P. (N. S.), 385, 22 O. D. N. P., 92.

The failure of the record to show the presence of the accused at the court's view of the premises, or the waiver by the accused of his right to be present, is not reversible error." Citing also Martin v State, 17 O. C. C., 406, 9 O. C. D., 621.

Counsel for defendant assigns as error 5, the court erred in the consideration of the evidence not offered in court by witnesses which the defendant could be permitted to meet face to face and to cross-examine. Counsel then sets out the statement of the court as to his visit to the room, and the fact that it would be difficult to see the light. Then counsel asserts that the court had no right to take the matter which he observed, as testimony, in fixing the guilt or innocence of the defendant.

We are impressed with the fact that the court's own statement as to what he observed and what conclusion he reached after he visited the room occupied by the witness Mahness, indicated that he did more upon that occasion than simply observe the place for the purpose of better understanding the evidence. but that he made his own observation and considered the same as evidence. He states:

"And from my observation it would be a very difficult angle to see down to the street—the street light can be seen from there, but it is very difficult to see it.

"So I can only arrive at one conclusion that the patient in the hospital was mistaken as to what he saw when referring to the light, in view of the testimony of the other witnesses who were down on the street and did see it."

This seems to us to be a very definite statement upon the part of the court that he considered "his observation as sufficient evidence to justify him in disregarding the testimony" of the witness who was a patient at the hospital.

Such matters have been discussed by our courts on a number of occasions, but we shall refer only to that case which we regard as of particular importance. **Webster v Pullman Company, 51 Oh Ap 131,** concerns the action of a trial judge in visiting the place where the accident was alleged to have occurred and in making independent experiments which he stated only corroborated the judgment that he had had before he made the visit. While he stated that his visitation and experiments only corroborated his former opinion, which was that the motion for a new trial be granted, the reviewing court held:

"The trial court's action in granting a motion for a new trial after thus viewing the scene of the accident is prejudicial error and an abuse of judicial discretion for such view substantiated his judgment, confirmed him in his conclusion and caused him to weigh the evidence to the end that it was determined that the plaintiff's evidence was unworthy of belief."

In the present case the court's view of the premises led him to the view that the evidence of the patient in the hospital was contradicted by the physical facts observed by the court on his visitation, and that such evidence consequently should be rejected. As we have stated before, we regard the evidence of this man in the hospital as very important and we are now of the opinion that the court, by visiting the room, and as a consequence of his personal investigation and observation, committed prejudicial error which entitles the defendant to a new trial.

Judgment of the Court of Common Pleas and the Municipal Court reversed, and the cause remanded to the Municipal Court for a new trial.

BARNES and HORNBECK, JJ., concur.